* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence or receive further evidence. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act. *Page 2 
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff alleges to have sustained a compensable injury on 25 August 2005.
5. An employment relationship existed between plaintiff and defendant during some or all of the time period of the previous paragraph.
6. Plaintiff's average weekly wage was sufficient to generate the maximum compensation rate for the year 2005, which is $704.00 per week.
7. The issues for determination are as follows:
 a. Whether plaintiff experienced a compensable injury by accident on or about 25 August 2005?
 b. If so, to what benefits is plaintiff entitled?
 c. Whether plaintiff refused suitable employment within the meaning of N.C. Gen. Stat. § 97-32?
 d. Whether defendants are entitled to a credit under N.C. Gen. Stat. § 97-42 for employer-funded short-term and long-term disability payments?
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence:
 • Stipulated Exhibit #1: I.C. Forms, discovery responses, plaintiff's personnel file, and medical records.
2. Subsequent to the hearing and as an attachment to his Contentions, plaintiff submitted photocopies of documents showing plaintiff's contributions to defendant's long-term *Page 3 
disability fund. Without objection of defendant, these documents are admitted into evidence as Plaintiff's Exhibit #1.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old. Plaintiff graduated from high school and completed four years of college. Beginning in 1977, plaintiff owned and operated his own delicatessen, and he performed all aspects of business operation until its closing in 1986. Thereafter, plaintiff worked as a stock clerk for a year before he accepted a position as a Route Merchandiser with Coca-Cola in 1987.
2. On 28 October 2004, plaintiff presented to Dr. Charles Estes, an orthopedic specialist at Park Ridge Medical Associates, with complaints "of a long history of knee and ankle problems." Dr. Estes stated that "the ankles and the knees both have previous injuries," and he noted that plaintiff had undergone a previous surgery on his knee. Plaintiff complained that his left ankle tended to give away a lot.
3. On 2 November 2004, plaintiff underwent an MRI of the left knee, which revealed a very abnormal lateral meniscus; a smaller more localized tear of the posterior horn of the medial meniscus; moderate chondromalacia of the medial and lateral compartments; moderate-sized knee joint effusion; and thin plicae medially and laterally. An MRI of the left ankle revealed no significant acute or focal abnormality.
4. On 12 November 2004, plaintiff underwent diagnostic arthroscopy of the left ankle with extensive debridement; diagnostic arthroscopy of the left knee with a partial medial *Page 4 
meniscectomy; chondroplasty; and partial synovectomy. Plaintiff continued to treat with Dr. Estes for knee and ankle problems for the rest of 2004.
5. On 3 February 2005, plaintiff underwent an MRI of the left knee, which revealed resection of a small and torn lateral meniscus; an extensive tear in the medial meniscus, particularly in the posterior horn; chondromalacia; developing focal chondromalacia in the medial joint compartment, particularly severe in the medial femoral condyle; and mild bone marrow medially with an increasing joint effusion. On 4 February 2005, Dr. Estes informed plaintiff that he had medial compartment arthritis.
6. On 7 March 2005, plaintiff presented to Dr. Estes without his brace and crutches, but advised that he had been using them. An x-ray revealed an abnormality of the medial tibial plateau as well as of the medial femoral condyle. Plaintiff was referred for a medial unloading brace with hope of returning plaintiff back to work. At that time, Dr. Estes opined that the brace "will buy him some time but he will need a knee replacement in the future."
7. On 17 May 2005, plaintiff began to treat with Dr. Elder, an orthopedic specialist, for reevaluation of his chronic knee problems. Dr. Elder noted that, despite plaintiff's second knee surgery in 2004, his pain "has gradually gotten worse since then." Dr. Elder noted that plaintiff had not responded to either cortico-steriod injections or Synvisc injections, and that his symptoms increased with any activity. Plaintiff reported that his symptoms were "much worse" when he returned to his normal work duties for six weeks.
8. On 24 May 2005, plaintiff returned to Dr. Elder to discuss a third knee surgery. Dr. Elder warned plaintiff that, if his symptoms were primarily degenerative, there was a chance that this procedure would not help his symptoms and the next most appropriate step would be a total knee arthroplasty. On 27 May 2005, Dr. Elder performed a debridement of two meniscal *Page 5 
tears, a chondroplasty of two regions of plaintiff's knee, and a partial anterior synovectomy in plaintiff's left knee. After the knee surgery, Dr. Elder informed plaintiff that, in addition to his meniscal tear, he had "significant degenerative joint disease."
9. Plaintiff presented to Dr. Elder on 21 June 2005 and 17 July 2005, and it was noted that his symptoms had not improved. Dr. Elder opined that plaintiff needed to consider the possibility of total knee replacement surgery.
10. On 17 July 2005, plaintiff requested that Dr. Elder release him to return to work as plaintiff's disability payments were due to expire. Plaintiff returned to full-duty work on 8 August 2005.
11. On 23 August 2005, plaintiff returned to Dr. Elder. His knee was "very painful and swollen." Plaintiff reported that his knee was about as bad as it was before the surgery. He also reported that he was "worried about losing his job." At this visit, Dr. Elder stated, "I think the only reasonable option at this point is a knee replacement." He noted that plaintiff had "degenerative changes in both the medial and lateral joints lines."
12. On 25 August 2005, plaintiff was moving a hand truck of drinks into a store. As he stepped off the sidewalk and onto the grass, he suffered a slip that resulted in a twisting motion of his left knee. The Full Commission finds the evidence is sufficient to show that the incident constituted an "accident" as defined by the Act. Plaintiff reported to Sisters of Mercy Urgent Care on 29 August 2005. He was diagnosed with left knee swelling and pain, and a left ankle sprain.
13. On 2 September 2005, plaintiff underwent an MRI of his left knee, which was interpreted by Dr. Martin Black, a radiologist. The MRI demonstrated that plaintiff experienced "no new meniscal tear" during his alleged incident on 25 August 2005. Rather, the only *Page 6 
difference between the 2 September 2005 MRI and the one performed on 3 February 2005, is that plaintiff presented with "mild progression of the degenerative signal in the medial femoral condyle." The MRI showed no loose bodies, no tendon damage, no cystic changes, and no muscular masses or hematomas.
14. Also on 2 September 2005, plaintiff underwent an MRI of his left ankle. While the MRI showed "extensive subcutaneous edema both medially and laterally," there were no tears of the structure of the ankle and no bone marrow signal to suggest fracture or bone bruise. That MRI did not demonstrate any traumatic injury at all, and Dr. Black stated, "Compared to November 2004 there has been little change."
15. The greater weight of the medical evidence shows, and the Full Commission finds, that plaintiff did not suffer an aggravation, acceleration or significant change in his pre-existing condition as a result of the injury by accident of 25 August 2005.
16. On 13 September 2005, Dr. Elder examined the tests and agreed with Dr. Black's assessment. Specifically, Dr. Black noted that there was "no evidence of a new tear or ligamentous injury." Dr. Elder continued to opine that plaintiff needed knee replacement surgery and on 22 November 2005, plaintiff underwent a left knee arthroplasty. Dr. Dement stated that this surgery was needed to correct plaintiff's "tricompartmental disease" arising out his "progressive osteoarthritis."
17. Plaintiff was disabled when he returned to work on 8 August 2005, and his need for a knee replacement had been well established by that time. The extent of his disability was not altered by the 25 August 2005 incident. Further, the greater weight of the medical evidence shows plaintiff's disabling deep vein thrombosis is not related to the incident of 25 August 2005, but is a result of his long-term progressive condition. *Page 7 
18. Plaintiff received $500 per week in short-term disability payments from an entirely employer-funded disability plan beginning in September 2005 and concluding in January 2006. Defendant is entitled to a credit for these amounts. The greater weight of the evidence shows that plaintiff contributed to defendant's long-term disability plan.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on 25 August 2005. N.C. Gen. Stat. § 97-2(6).
2. The medical evidence shows that plaintiff's pre-existing, disabling condition of his left knee and ankle was not significantly aggravated, accelerated or otherwise changed by the incident of 25 August 2005. Accordingly, plaintiff is not eligible for benefits under the Act for his left leg condition or any resulting disability. N.C. Gen. Stat. § 97-29.
3. To the extent that defendant has compensated plaintiff for the incident of 25 August 2005, it is entitled to a credit for those amounts paid in short-term disability pursuant to an employer-funded program. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the Act must be and is hereby denied.
 2. Each side shall bear its own costs. *Page 8 
 * * * * * * * * * * *
This the __ day of April 2008.
S/______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ BUCK LATTIMORE COMMISSIONER *Page 1